UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN CILAURO,

       Plaintiff,      06-CV-0498

vs.

               (NAM/DRH)

JOHN V. DUFF,

       Defendant.
_____

**APPEARANCES:**        **OF COUNSEL:**

BRENNAN & WHITE, LLP.      Daniel Stewart, Esq.
163 Haviland Road
Queensbury, New York 12801
*Attorneys for Plaintiff*

ANDREW M. CUOMO       Gerald J. Rock, Esq.
Attorney General of the State of New York  Assistant Attorney General
The Capitol
Albany, New York 12224
*Attorneys for Defendant*

**Hon. Norman A. Mordue, Chief U.S. District Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

  The present case arises from plaintiff's arrest on April 27, 2005, at the State Trooper Barracks in Queensbury, New York. Plaintiff was arrested and charged with criminal possession of stolen property and resisting arrest. Plaintiff commenced the within action under 42 U.S.C. § 1983 claiming that defendant, John Duff, an investigator for the New York State Police Bureau of Criminal Investigation, used excessive force in executing his arrest in violation of the Fourth Amendment to the United States Constitution. Plaintiff also asserts § 1983 claims for false arrest and malicious prosecution and claims that defendant violated his Sixth Amendment right to

counsel and his Fifth Amendment right of due process. Finally, plaintiff raises state law claims for false arrest and malicious prosecution. Presently before the Court is defendant's partial motion for summary judgment (Dkt. No. 19) seeking dismissal of plaintiff's first, third, fourth, fifth and sixth causes of action pursuant to Fed. R. Civ. P. 56.[1] Plaintiff has opposed defendant's motion.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[2]

The facts, unless otherwise noted, are undisputed. In April 2005, Steven Quirion, the owner of Bare Bones Furniture Store ("Bare Bones") in Glens Falls, New York, complained to the State Police that furniture was missing, and presumed stolen, from his warehouse. The warehouse was located on Luzerne Road in Queensbury, New York and was distinct from the showroom and store.

Trooper Warren Law was assigned to conduct an initial investigation of the matter. Trooper Law traveled to the store and interviewed Mr. Quirion and Nehemia Rivera, a Bare

---

[1] Defendant has not moved for summary judgment and dismissal of plaintiff's second cause of action which alleges that defendant violated plaintiff's Fourth Amendment rights with the use of excessive force.

[2] Defendant filed a Statement of Material Facts pursuant to Local Rule 7.1. Plaintiff, although represented by counsel, failed to respond to Defendant's Local Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) states:

> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. <u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.

Local Rule 7.1(a)(3)(emphasis in original). As plaintiff has failed to properly respond to Defendant's Statement of Material Facts, the Statement will be accepted as true to the extent that the facts are supported by evidence in the record. *See Orraca v. Pilatich*, 2008 WL 4443274, at *3 (N.D.N.Y. 2008); *see also N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (the Court deemed the properly supported allegations in the defendant's L.R. 7.1 Statement admitted for the purposes of the motion).

The facts set forth in this section are taken from: (1) the Complaint; (2) the Answer; (3) Defendant's Statement of Material Facts; (4) the exhibits and evidence submitted by defendant in support of the motion for summary judgment; and (5) the exhibits and evidence submitted by plaintiff in opposition to defendant's motion for summary judgment. The facts, as discussed herein, are for the relevant time period as referenced in the complaint.

2

Bones employee. Mr. Quirion indicated that he had not done a full inventory, but that certain items were missing including a dresser, a bar and nightstands. On April 26, 2005, Mr. Rivera provided a supporting deposition to Trooper Law and stated that he worked at the warehouse on weekends with Harry Mundell ("Mundell"), another Bare Bones employee. Mr. Rivera stated that people would come to the warehouse and Mundell would show them furniture. Mr. Rivera stated that "the people that live on 12 Beacon Street in the city of Glens Falls" were at the warehouse almost every weekend and they would pick up furniture without a receipt.[3] In January or February 2005, Mundell asked Mr. Rivera to help load the Bare Bones truck with two other men, who were not Bare Bones employees. Mr. Rivera noticed that the boxes were never opened and the items were never compared to receipts. After loading the truck, Mr. Rivera followed the truck in his own vehicle to 12 Beacon Street, Glens Falls, New York. Upon arriving, Mr. Rivera helped unload the items from the truck.

Based upon Mr. Rivera's statement, Trooper Law went to 12 Beacon Street and spoke with Lorraine Cilauro, plaintiff's wife.[4] Ms. Cilauro told Trooper Law that her husband had purchased furniture from Bare Bones and allowed Trooper Law into her home to see the items. On April 26, 2005, Ms. Cilauro provided a supporting deposition to Trooper Law. Ms. Cilauro stated that in March 2005, Bare Bones "people" delivered furniture to her house. Ms. Cilauro stated that her husband told her that he bought the furniture on Sunday at a warehouse from "a guy at Bare Bones who told him that he had purchased these items as overstock and was reselling them". Ms. Cilauro stated that a bar, dresser and nightstand, among other items, were at her

---

[3] Based upon the record, plaintiff resided with his wife, Lorraine Cilauro, at 12 Beacon Street in Glens Falls, New York.

[4] Plaintiff's wife indicated that plaintiff was out of town. Trooper Law provided his information so that plaintiff could contact him when he returned.

3

home. Ms. Cilauro stated that her husband paid for the items in cash but she did not know the amount paid.

Upon completing his initial investigation, Trooper Law turned the matter over to defendant and advised defendant what he had learned from his investigation.[5] Defendant asked State Police Investigator Steven J. Wetmore ("Wetmore") to assist him with the investigation. On April 27, 2005, defendant and Wetmore went to the Bare Bones warehouse to speak with Mundell. Defendant asked Mundell to accompany them to the barracks for an interview. According to Wetmore, Mundell was very cooperative during the interview and cried because he was "very concerned that he was going to lose his job". Initially, Mundell represented to defendant and Wetmore that the furniture was Mundell's to sell and that Mundell told plaintiff the same. However, when Mundell was asked to produce receipts, Mundell stated he could not.[6] During his deposition, Wetmore testified that Mundell admitted the he sold furniture from the Bare Bones warehouse to people, including plaintiff, for less than cost and without a receipt. According to Wetmore and defendant, Mundell provided one sworn statement.[7]

In his sworn statement, Mundell averred that he was employed by Bare Bones and that he needed money so his friend, Jeff Fugazy, introduced him to a contractor named John who had a lot of money and needed furniture. Beginning in February 2005, Mundell sold furniture to plaintiff. Mundell stated that plaintiff came to the warehouse on Luzerne Road to pick out items. Mundell stated that he told plaintiff it would have to be a cash deal without a receipt. Mundell

---

[5] From 1974 until 2002, defendant was a N.Y. State Trooper. From 2002 until 2004, defendant was an investigator for the Warren County District Attorney's Office. Defendant returned to the State Police and was employed as an investigator from February 2004 until October 2005. Defendant is presently retired.

[6] Defendant testified that Mr. Quirion told defendant that "anything that was in that warehouse is mine. It's addressed to Bare Bones. It's in their packaging, labeled or whatever, it belongs to Bare Bones".

[7] Defendant testified that Mundell prepared only one statement. Wetmore testified that he did not see defendant destroy any statements written by Mundell.

4

also stated that he told plaintiff that "some of the stuff was mine but [plaintiff] questioned why it was in Bare Bones boxes and I told him that it wasn't mine".  Mundell claimed that plaintiff selected a King mattress set, 2 coffee tables, 3 sofas and a love seat.  Plaintiff paid $825 (including a $25 tip) for the items.  Mundell stated that he delivered the items to plaintiff's home at 12 West Beacon Street in Glens Falls.  Mundell admitted to selling additional items to plaintiff two weeks later.  At that time, plaintiff paid cash for a set of end tables ($50.00 each), a chest ($75.00) and a queen set of bedding ($100.00).  In April 2005, plaintiff returned to the warehouse and purchased a bar and stools for $200.00.  Mundell stated that plaintiff also wanted a set of "antler lamps" which were $180.00 but Mundell gave them to plaintiff at no cost.  Defendant arrested Mundell on a charge of grand larceny.  Defendant gave Mundell an appearance ticket and allowed Mundell to leave the barracks based upon his "attitude".

Later the same day, plaintiff appeared at the barracks and was interviewed by defendant and Wetmore.[8]  Plaintiff admitted that he bought furniture from Mundell on two separate occasions, each time on a Sunday.[9]  Plaintiff told defendant that he had one receipt for the furniture but did not produce the receipt.  Plaintiff admitted to purchasing 15 pieces of furniture in the amount of $2,200.00, which he paid in cash.  During his deposition, plaintiff testified that he told defendant that he did not know that the furniture was stolen.  Defendant testified that he could not recall exactly what plaintiff stated regarding Mundell's representations to plaintiff and that plaintiff would not provide specifics other than the fact that "Mundell had told him that there

---

[8] Plaintiff arrived at the barracks with Jeff Fugazy.  Plaintiff stated that Mr. Fugazy accompanied him because he "had knowledge of the transactions".  Mr. Fugazy was not interviewed by defendant or Wetmore.

[9] Defendant claims that no legitimate sales were conducted by Bare Bones from the warehouse on Sunday.  Defendant claims he became aware of that fact "during the investigation".  Plaintiff disputes that fact claiming that there were other customers present when plaintiff purchased the furniture.

5

was some of the stuff that he owned, but he purchased additional items". Wetmore testified that plaintiff, "did not discuss the specifics of his purchase of furniture from Mr. Mundell in any detail".

During the interview, plaintiff became irate and attempted to leave the interview room.[10] Defendant prevented plaintiff from leaving the room.[11] Plaintiff was arrested and charged with criminal possession of stolen property in the fourth degree and resisting arrest.

Plaintiff filed the within complaint alleging six causes of action. In the first cause of action, plaintiff alleges:

> That the detention and arrest of plaintiff, John Cilauro, by defendant, John V. Duff, was wrongful, unlawful and unconstitutional, as there was no probable cause to believe that plaintiff engaged in criminal conduct.
>
> That the charges against plaintiff, John Cilauro, were maliciously prosecuted by defendant, John V. Duff.
>
> That as a result of the unreasonable seizure and the malicious prosecution of plaintiff, John Cilauro, by defendant, John V. Duff, plaintiff, John Cilauro, was caused to suffer injuries and damages, and was required to expend significant sums of money in defense of the false charges.

In the third cause of action, plaintiff alleges that his Sixth Amendment right to be represented by counsel and a "concurrent right not to be retaliated against by the police for exercising that right" were violated. The fourth cause of action contains allegations relating to plaintiff's Fifth Amendment right of Due Process. Finally, plaintiff's fifth and sixth causes of action advance state law claims of malicious prosecution and false arrest.

---

[10] The parties disagree as to what prompted plaintiff to attempt to leave. Plaintiff testified that he attempted to leave, was assaulted by defendant and then told he was under arrest. Defendant testified that he did not tell plaintiff he was under arrest until plaintiff attempted to leave. Wetmore stated that defendant told plaintiff he was going to be arrested and that plaintiff responded by getting out of his chair and walking towards the door.

[11] The parties disagree as to what transpired after plaintiff attempted to leave. However, those facts are beyond the scope of the within motion.

**III.    DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). It is with these considerations in mind that the Court addresses defendant's motion for summary judgment.

**B.    Substantive Legal Standard**

Plaintiff bases his federal claims on 42 U.S.C. § 1983, which reads in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)).

C.     **False Arrest and Malicious Prosecution**

Defendant argues that the record demonstrates that there was probable cause to arrest plaintiff and therefore, summary judgment and dismissal of plaintiff's claims of false arrest and malicious prosecution is appropriate. Plaintiff argues that a question of fact exists as to whether defendant had probable cause to arrest plaintiff.[12]

The elements of plaintiff's § 1983 claims of false arrest and malicious prosecution are substantially identical to the elements of their state law counterparts. *Ortiz v. Henriquez*, 2001 WL 1029411, at *3 (S.D.N.Y. 2001). To establish a claim for false arrest, a plaintiff must demonstrate that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Prowisor v. Bon-Ton, Inc.*, 426 F.Supp.2d 165, 171 (S.D.N.Y. 2006). In order to prevail on a claim for malicious prosecution, a plaintiff must show: (1) the initiation and continuation of a criminal proceeding by the defendant against the plaintiff; (2) lack of probable cause for commencing the criminal proceeding; (3) actual malice; and (4) the termination of the proceeding in favor of the accused. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2nd Cir. 2000). The critical element of both causes of action is the existence or absence of probable cause. *Reinhart v. City of Schenectady Police Dep't*, 599 F.Supp.2d 323, 328 (N.D.N.Y. 2003). If probable cause exists, the claims of false arrest and malicious prosecution must fail. *Id*. (citing *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003)). The existence of probable

---

[12] Plaintiff argues that defendant does not address plaintiff's claim of false arrest and malicious prosecution with regard to the charge of resisting arrest. The Court has reviewed plaintiff's complaint and notes that plaintiff refers to "the charges". Defendant's moving papers are devoid of any argument in support of summary judgment and dismissal of plaintiff's claims of false arrest and malicious prosecution as they pertain to the charge of resisting arrest. Accordingly, the Court will analyze this portion of defendant's motion only with regard to the charge of criminal possession of stolen property in the fourth degree.

8

cause to arrest constitutes justification and "is a complete defense to an action for false arrest" whether that action is brought under state law or under § 1983. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

"Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *accord Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). In evaluating probable cause, courts consider the facts available to the officer at the time of the arrest. *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000); *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir.1996). Moreover, it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth. *See Daniels v. United States*, 393 F.2d 359, 361 (D.C.Cir. 1968). The officer is not, however, required to "make a full investigation into plaintiff's state of mind prior to taking action" or to "explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti,* 124 F. 3d at 128.

In this case, plaintiff was arrested for criminal possession of stolen property in the fourth degree in violation of N.Y. Penal Law § 165.45, and resisting arrest in violation of N.Y. Penal Law § 205.30.[13]  A person is guilty of criminal possession of property in the fourth degree when:

> he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof, and when:

---

[13] As the Court previously noted, defendant makes no argument with regard to this charge.

9

      1.      the value of the property exceeds one thousand dollars.

N.Y. Penal Law § 165.45(1). Knowledge that property is stolen may be shown circumstantially, such as by evidence of recent exclusive possession, defendant's conduct or contradictory statements from which guilt may be inferred. *People v. Zorcik*, 67 N.Y.2d 670, 671 (1986). Generally, possession suffices to permit the inference that the possessor knows what he possesses, especially, but not exclusively, if it is in his hands, on his person, in his vehicle, or on his premises. *People v. Reisman*, 29 N.Y.2d 278, 285-286 (1971), *cert. denied* 405 U.S. 1041). It is impossible for a police officer to ascertain, with any degree of certainty, a persons particular state of mind at the time of the commission of some act. *See Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989) (holding that officer was entitled to rely on the implications of the information known to him in assessing whether the plaintiff possessed knowledge that property was stolen).

In this case, defendant asserts that a reasonable police officer could conclude that plaintiff knew he was purchasing stolen furniture. Therefore, probable cause existed to support plaintiff's arrest.[14] Plaintiff argues that whether or not probable cause existed is, "wholly dependant upon which version of facts is credited".

Based upon the record, defendant relied upon certain facts and information prior to arresting plaintiff on April 27, 2005.[15] First, it is undisputed that plaintiff was in possession of the subject property and that defendant was aware of that fact. Second, it is undisputed that

---

[14] Defendant claims that the only element of the crime in dispute is the element of knowledge. Plaintiff disagrees and argues that the value placed on the furniture by the police was $2,000.00 and plaintiff paid $2,200.00. Accordingly, plaintiff argues there is a "glaring disparity". However, as there is no dispute that the value of the property exceeded $1,000.00, the Court finds this argument to be without merit.

[15] The Court notes that both parties have cited to deposition testimony of the parties and witnesses in support of their arguments with regard to the existence or absence of probable cause. However, for the purposes of this motion, the Court will only consider deposition testimony relevant to what was known by defendant at the time of the arrest.

defendant relied upon the sworn statements of Mr. Rivera, plaintiff's wife and Mundell.  Plaintiff does not contest the veracity of the sworn statements made by Mr. Rivera and his wife.[16]  Defendant also relied upon certain facts which are supported by the record including: (1) plaintiff paid cash for property valued in excess of what he paid; (2) plaintiff could not produce receipts for the furniture; and (3) plaintiff purchased the furniture from the Bare Bones warehouse on Sunday, when defendant believed the warehouse was closed.

Plaintiff's factual arguments in opposition to the motion are unsupported by the record or by competent admissible evidence.  Specifically, plaintiff claims that prior to plaintiff's arrest, defendant was told that plaintiff did not know that the furniture was stolen.  In support of that assertion, plaintiff offers an affidavit from Jeff Fugazy.  In Fugazy's affidavit, dated November 12, 2007, Fugazy claims that he saw defendant in the waiting room after defendant interviewed plaintiff for approximately 30 minutes.  Fugazy claims that defendant told him that plaintiff was going to jail.  Shortly thereafter, Fugazy avers that he went outside and saw defendant in his car.  Fugazy contends that defendant rolled down his window and that Fugazy told defendant that "we had no idea this furniture was not his to sell".

The Court finds that this affidavit fails to raise a triable issue with regard to whether or not defendant had probable cause to believe that plaintiff committed the offense at the time of plaintiff's arrest.  The affidavit was prepared 2 ½ years after plaintiff's arrest and despite Fugazy's assertions, neither plaintiff nor Fugazy claim that Fugazy provided the subject information to defendant <u>prior</u> to plaintiff's arrest.

Plaintiff further claims that he specifically told defendant, during his interview, that he did

---

[16] In opposition to the within motion, plaintiff claims that Mundell's sworn statement to defendant was coerced.  The Court will examine that allegation *infra*.

11

not know the furniture was stolen. Even assuming this statement is true, defendant was not obligated to credit plaintiff's version of events in determining whether to make an arrest. *See Alfaro v. City of New York*, 2007 WL 258173, at *4 (S.D.N.Y. 2007).

Finally, plaintiff argues that Mundell's statement was coerced and therefore, unreliable. In support of that assertion, defendant offers a subsequent affidavit from Mundell, dated May 5, 2005 (one week after plaintiff's arrest). In the affidavit, Mundell claims that he went to the barracks with defendant and told defendant that he was " just selling stuff that I bought for myself". Mundell claims that he initially began writing a statement for defendant but that defendant "called him a liar" and wrote the second statement himself. Mundell claims that defendant used physical force and made Mundell sign the statement without reading it. Mundell also stated:

> I definitely told John Cilauro it was my furniture. It was. In fact, John asked me each time for a certain dresser he saw. I told him it wasn't mine. We would have to go through the store.

Although Mundell's affidavit creates a factual dispute, that dispute does not raise a triable issue of fact concerning the issue of probable cause. Despite Mundell's assertions, nowhere in the affidavit does Mundell claim that he told defendant, prior to plaintiff's arrest, that plaintiff was not aware that the furniture was stolen. Indeed, during plaintiff's deposition, plaintiff conceded that Mundell did not tell defendant, at any time prior to plaintiff's arrest, that plaintiff did not know that the furniture was stolen.[17] Based upon the record, the Court finds that

---

[17] During plaintiff's deposition, he testified as follows:

Q. Okay. To the best of your knowledge, did Mr. Mundell ever give the state police a statement saying that you knew nothing about the furniture being stolen before you were arrested?
A. No.
Q. Do you have any reason to believe that at any time before you were arrested Mr. Mundell told anyone from the state police that you didn't know the furniture was stolen?
A. No.

12

defendant had probable cause to arrest plaintiff for criminal possession of stolen property in the fourth degree.

Even assuming that Mundell's initial statement was coerced, defendant claims that he is also protected against plaintiff's claims by qualified immunity. An officer who acts without probable cause, is entitled to qualified immunity from a suit for false arrest (or malicious prosecution) if he can show that there was at least "arguable probable cause," which "exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.' " *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004); *see also Robinson v. Via*, 821 F.2d 913, 921 (2d Cir. 1987). Summary judgment on the basis of qualified immunity is appropriate where the only conclusion a rational jury could reach is that under the circumstances it was objectively reasonable for the officer to believe there was probable cause to make the arrest or that reasonably competent police officers could disagree about the legality of the arrest. *See Ricciuti*, 124 F.3d at 128; *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995).

In this case, based the record, even if defendant did not have probable cause to believe that plaintiff knew the furniture was stolen, defendant acted in an "objectively reasonable manner" and the record establishes that reasonably competent police officers could disagree on the question of probable cause. Accordingly, defendant's motion for summary judgment and dismissal of plaintiff's first, fifth and sixth causes of action with regard to the charge of criminal

---

In opposition to the within motion, plaintiff submitted an affidavit dated November 2007. In the affidavit, plaintiff claims that, "[a]fter being released, I had a conversation with Mr. Mundell which he indicated that he told the police that he had stated to me that the furniture for sale was his furniture, and that he had every right to sell it to me". Pltf. Aff. ¶ 11. It is well settled in the Second Circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment. *Mack v. U.S.*, 814 F.2d 120, 124 (2d Cir. 1987). As this portion of plaintiff's post-deposition affidavit is clearly contrary to his prior deposition testimony, the Court will not consider Paragraph 11 of plaintiff's affidavit in the context of the within motion. *See Sheinbrot v. Pfeffer*, 1995 WL 432608, at *3 (E.D.N.Y. 1995).

possession of stolen property in the fourth degree, is granted.

**D.      Plaintiff's Sixth Amendment Cause of Action**

Plaintiff alleges that his Sixth Amendment right to counsel was violated.  Plaintiff further alleges that he had a "concurrent right not to be retaliated against by the police for the exercise of that right".  Defendant argues that he is entitled to summary judgment because no Sixth Amendment protect right was implicated on the facts as alleged by plaintiff.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  Under federal law, the right to counsel under the Sixth Amendment does not attach until formal criminal proceedings are initiated. *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).  The Supreme Court "has never held that the sixth amendment right to counsel attaches at the time of arrest." *U.S. v. Annucci*, 2007 WL 1310156, at *3 (S.D.N.Y. 2007) (citing *U.S. v. Smith*, 778 F.2d 925, 932 (2d Cir. 1985)). "Where a defendant has been arrested on a warrant but not yet indicted, the Sixth Amendment right attaches upon the defendant being arraigned." *U.S. v. Reich*, 2005 WL 524553, at *3 (E.D.N.Y. 2005).

In opposition to the motion, plaintiff claims that defendant's own testimony creates an issue of fact as to whether or not plaintiff was in custody at the time he requested counsel.  However, the factual dispute as to whether or not plaintiff had been arrested prior to requesting counsel does not create a triable issue of fact sufficient to deny summary judgment.  The record reveals that no charging instrument had been filed against plaintiff and no formal adversarial proceeding had been initiated at the time he alleges that he requested an attorney.  Therefore, plaintiff's Sixth Amendment right to counsel had not yet attached. *See Reid v. City of New York*, 2004 WL 626228, at *11 (S.D.N.Y. 2004).  With regard to plaintiff's claim that defendant

14

assaulted him in retaliation for exercising his right to counsel, defendant notes that there is no authority for this allegation. Generally, "retaliation" refers to an "adverse action" that has a "causal connection" to "protected activity." *See Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). As the Court has determined that plaintiff had no federal constitutional right to counsel at the time he alleges, this allegation lacks merit. Consequently, defendant's motion for summary judgment and dismissal of plaintiff's third cause of action is granted.

E.     **Plaintiff's Due Process Claim[18]**

In the complaint, plaintiff alleges that his constitutional right "not to be deprived of due process of law and not to have coerced statements used against him in a criminal proceeding" was violated. Defendant argues that plaintiff's due process claim must be dismissed because the conduct alleged does not rise to the level of a constitutional violation. Plaintiff has presented no argument in support of this claim in his opposition papers. The Court may, in its discretion, deem the cause of action abandoned. *See Cummins v. U.S. Xpress, Inc*., 2009 WL 857401, at *2 (S.D.N.Y. 2009). However, even on the merits, summary judgment is warranted.

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. However, "[w]here a particular constitutional amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these

---

[18] Plaintiff's due process claims are alleged in the context of the Fifth Amendment. However, defendant correctly notes that claims under the Fifth Amendment "are actually actionable only against federal, not state actors" and therefore, plaintiff's claims are more appropriately analyzed in the context of the Fourteenth Amendment. *See Ambrose v. City of New York*, 2009 WL 890106, at * 10 (S.D.N.Y. 2009) (holding that any due process rights the plaintiff enjoys against state governmental officials arise from the Fourteenth Amendment due process clause).

claims.' " *Simons v. New York*, 472 F.Supp.2d 253, 265 (N.D.N.Y. 2007) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994)); *see also Bryant v. City of New York*, 404 F.3d 128, 135-36 (2d Cir. 2005).

In this case, defendant's actions, which plaintiff contends were "conscious-shocking and deliberately indifferent", are very closely intertwined with plaintiff's arrest and prosecution. *See Simons*, 472 F.Supp.2d at 265 (holding that since the Fourth Amendment provided an explicit textual source of protection against pretrial deprivations of liberty, including false arrest and malicious prosecution, it is the proper guide for analyzing the plaintiffs' constitutional claims, not the Fourteenth Amendment). Because plaintiff's claim for denial of due process is thus properly characterized as one alleging the use of excessive force, malicious prosecution and false arrest, the claims are properly analyzed under the tenets of the Fourth Amendment. Therefore, defendant's motion for summary judgment and dismissal of plaintiff's fourth cause of action is granted.

### IV.    CONCLUSION

Based on the foregoing, it is hereby

**ORDERED** that defendant's motion for summary judgment and dismissal (Dkt. No. 19) of plaintiff's first, fifth and sixth causes of action is **GRANTED** only to the extent that the causes of action pertain to plaintiff's arrest for criminal possession of stolen property in the fourth degree; it is further

**ORDERED** that defendant's motion for summary judgment and dismissal (Dkt. No. 19) of plaintiff's third and fourth causes of action is **GRANTED**; it is further

**ORDERED** that the parties electronically file a joint status report as to estimated length of trial and any outstanding issues on or before June 1, 2009.

16

**IT IS SO ORDERED.**

**DATED: May 18, 2009**
       **Syracuse, New York**

*/s/ Norman A. Mordue*
Norman A. Mordue
Chief United States District Court Judge